ALFORD, Judge.
This appeal arose out of the nonpayment of fees for legal services performed in connection with the development of a shopping center in Lafayette, Louisiana. The plaintiff, Bobby Forrest, sued the developer, Common Point Investment Group (CPIG), the developer’s successor in interest, “W.M.L.”, A Partnership in Commendam (WML)[1], and the construction lender, Allied Bank of Texas (Allied), for the payment of legal services rendered by Mr. Forrest in representing CPIG/WML in the development of the Common Point Shopping Center. CPIG/WML acquiesced in the granting of a summary judgment against it on Mr. Forrest’s claim and asserted a third party demand against Allied. It is from the trial court’s granting of CPIG/WML’s third party demand against Allied for the legal fees of Bobby Forrest that Allied has appealed. CPIG/WML answered Allied’s appeal and sought an increase in the trial court’s judgment from $8,561.54 to $15,000.00.
FACTS
In June of 1983, Allied Bank agreed to loan CPIG/WML up to 7.9 million dollars to develop the Common Point Shopping Center. Unfortunately the shopping center project experienced financial difficulties and more funds were needed for completion. On June 19, 1985, Allied and CPIG/WML executed an amendment titled “Act of First Supplemental Building and Loan Agreement” which increased the existing loan by an additional 3.9 million dollars. The financial problems persisted and two subsequent amendments were made to the loan agreement. The second amendment, executed on January 30, 1986, extended the time period in which Allied would advance funds to CPIG/WML, but did not provide for any additional funds. The third amendment, executed on September 25, 1986, provided for the advancement of an additional six hundred and fifty thousand dollars ($650,000.00). The loan agreements provided that Allied would advance funds to CPIG/WML pursuant to draw requests submitted by Jimmy C. Thompson, the president and sole owner of CPIG/WML’s managing partner, 4483 Cor *963 poration. Due to cost overruns, a number of the draw requests were not fully funded and various suppliers of goods and services to CPIG/WML were not paid in full. One such creditor was CPIG/WML’s attorney, Bobby Forrest.
On October 3, 1986, Mr. Forrest filed suit against CPIG/WML and Allied Bank seeking $18,036.52 in compensation for legal services. CPIG/WML in its answer to Mr. Forrest’s petition admitted all the allegations in said petition and subsequently a summary judgment was entered against CPIG/WML prior to trial. In addition CPIG/WML’s answer asserted a third party claim against its co-defendant and lender, Allied Bank, for Mr. Forrest’s fees.
At trial on the merits, the district court dismissed Mr. Forrest’s claim against Allied Bank citing paragraph 12 of the first supplemental loan agreement as specifically excluding other parties from benefiting from the stipulations of the contract. The trial court reasoned that Mr. Forrest’s awareness of the above provision prevented him from claiming that he had reasonably relied to his detriment upon any other provision of the contract providing that the proceeds would be advanced to CPIG/WML to pay its legal fees. This holding has not been appealed.
On the matter of CPIG/WML’s third party demand against Allied, the trial court held Allied liable to CPIG/WML for $8,561.54 of Bobby Forrest’s legal fees. Allied’s appeal praying for reversal of this judgment and CPIG/WML’s subsequent answer asking that the judgment be increased to $15,000.00 are addressed herein.
PROPRIETY OF JUDGMENT IN FAVOR OF THIRD PARTY PLAINTIFF
Third party defendant, Allied, appeals the trial court judgment in favor of CPIG/WML arguing that all of the bank’s obligations under both the first and third supplemental loan agreements were met. Both of these documents obligated Allied Bank to advance Funds to CPIG/WML, upon submission of properly documentated draw requests, as it incurred certain expenses in connection with completion of construction of the Common Point Shopping Center. At trial the following facts were undisputed: that the legal fees at issue were owed by CPIG/WML and were rendered in connection with the Common Point project; that at least $8,561.54 of the legal bills had been properly submitted by CPIG/WML to Allied Bank for funding;[2] and that all draw requests were not funded in full by Allied.
Although the trial court found an ambiguity in the first supplemental loan agreement which would require Allied to fund CPIG/WML’s legal expenses, we find it unnecessary to address this issue as we affirm the trial court judgment on other grounds as stated hereinafter. Since the provisions of the first supplemental contract were adopted by all subsequent supplemental contracts, a brief discussion of the relevant provisions of the first supplemental contract are set out below.
The Act of First Supplemental Building and Loan Agreement, dated June 19, 1985, provided that Allied would advance up to $3.9 million to CPIG/WML to complete the Common Point project. The fact that the full $3.9 million in loan proceeds was advanced is uncontroverted. The contractual provision at issue is that found in Section 7 of the first supplemental contract which obligates Allied to advance funds to pay CPIG/WML’s construction related legal fees. Section 7 states that:
“Bank shall make advances to Owner, from time to time upon application by Owner, of such amounts as may be necessary to enable Owner to pay obligations incurred by Owner for ... attorney’s fees ... incurred by Owner in connection with the construction of the Improvements, such amounts to be advanced as the various items of expense, or portions thereof, are incurred by Owner.”
*964 The Act of Third Supplemental Building and Loan Agreement, dated September 25, 1986, provided for an additional loan of $650,000.00. Mr. Forrest’s outstanding bill of $8,561.54 was specifically listed in CPIG/WML’s initial request for approximately $690,000.00 in additional funding. The third supplemental contract did not contain an express provision providing an allocation of funds to be advanced to soft costs. Allied’s loan officer, Robert LaRue, testified that he could not remember whether the parties agreed to an allocation of the loan proceeds into categories of costs. In response to the court’s inquiry as to whether there was any documentation which would reveal an allocation of costs, Mr. LaRue testified, “the loan application itself.”
The loan application, dated September 25, 1986, was prepared by Mr. LaRue and contained the following allocation:
1. Pay interest $375,000.00
2. Construction 185,000.00
3. Legal, Title & Closing (soft costs) 90,000.00
$650,000.00
The court, concerned with the lack of bank records itemizing disbursements into categories of costs, inquired as to what the bank would use to guide it in making disbursements of loan proceeds. Mr. LaRue responded, “[i]t [the loan application] should have been, but I don’t know that for a fact.”
Based on the above testimony and the evidence of the loan application, the trial court found that Allied had agreed to advance CPIG/WML up to $90,000.00 in funding for soft costs out of the $650,000.00 loan. Prior to the $650,000.00 loan CPIG/WML had submitted a properly supported draw request for $8,561.54 in funding to pay for Mr. Forrest’s legal services. In his May 2, 1986, letter which requested additional funding and which eventually led to the $650,000.00 loan, Mr. Thompson specifically listed the $8,561.54 outstanding bill of Mr. Forrest as one of the expenses he needed funding for. After the $650,000.00 loan was made on September 25, 1986, Mr. Thompson submitted a draw request, dated October 14, 1986, which included $15,000.00 in funding for Mr. Forrest. The $15,000.00 request was not documentated by an invoice, but Allied already had in its possession an unpaid Forrest invoice for $8,561.54. Allied failed to produce satisfactory proof that the $90,000.00 that the court found to have been allocated for soft costs was exhausted prior to the submission of this draw request on October 14, 1986. Therefore, the trial court concluded that Allied had breached its obligation to fund CPIG/WML a properly submitted and supported soft cost expense which fell within the allocated limits.
It is well settled that a court of appeal may not set aside the factual findings of a trial court or jury in the absence of manifest error or unless it is clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) We find no manifest error in the trial court’s factual findings. Therefore, this court will not disturb the trial court’s factual finding that $90,000.00 of the third loan was allocated to the payment of soft costs.
PROPRIETY OF INCREASING THE AMOUNT OF JUDGMENT
Third party plaintiff contends that the trial court erred in awarding only $8,561.54 and asks that the judgment be increased to $15,000.00.[3] The loan agreement expressly provides that advances shall be made only upon submission of draw requests properly supported by the appropriate documentation. Review of the record reveals that no invoice for attorneys fees in excess of $8,561.54 was submitted *965 to Allied in support of a draw request. Therefore the trial court’s award of $8,561.54 is proper and should not be disturbed.
For the reasons assigned in the foregoing opinion, the judgment of the trial court is affirmed, and all costs of this appeal are to be borne by appellant herein.
AFFIRMED.

. CPIG and WML are referred to herein collectively as CPIG/WML.

. CPIG/WML’s contention that $15,000.00 in legal bills were submitted with proper documentation as contractually required, will be addressed hereinafter.

. In its written reasons for judgment the trial court stated:
"[I]n preparation of these written reasons the court realizes that it erred in awarding 18,561.54 and that it should have awarded $15,000.00 ... [t]he Court requests briefs ... to determine whether the error in the amount of the judgment is an error of calculation under LSA-C.C.P. Article 1951(2).”
No amendment to the amount of the judgment was made. And a careful review of the submitted evidence reveals no document to substantiate the $15,000.00 amount.